This is an appeal from a judgment of the Washington County Court of Common Pleas in which appellant Jeffrey S. Hickmott was found guilty, following a jury trial, and sentenced on four counts of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree.
In support of his appeal appellant sets forth four assignments of error.
FIRST ASSIGNMENT OF ERROR
 "TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING EVIDENCE OF PRIOR ACTS OF APPELLANT DENYING HIM RIGHT TO FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED UNDER ARTICLE 1, SECTIONS 5, 10, AND 16 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION."
 SECOND ASSIGNMENT OF ERROR
 "TRIAL COURT ERRED BY FAILING TO EXCLUDE EVIDENCE ON GROUNDS OF PREJUDICE AND CONFUSION, DENYING DEFENDANT DUE PROCESS OF LAW AND A FAIR TRIAL AS GUARANTEED UNDER ARTICLE 1, SECTIONS 5, 10, AND 16
OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION."
 THIRD ASSIGNMENT OF ERROR
 "TRIAL COURT ERRED IN ADMITTING EVIDENCE INDICATING THAT THE VICTIM SUFFERED FROM POST-TRAUMATIC STRESS DISORDER WITHOUT THE BENEFIT OF EXPERT TESTIMONY."
 FOURTH ASSIGNMENT OF ERROR
 "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER ARTICLE 1, SECTION 10
OF THE OHIO CONSTITUTION AND THE SIXTH AMENDMENT TO THE FEDERAL CONSTITUTION."
The facts that are relevant to the issues raised on appeal are as follows. On April 27, 1997, indictments were returned by the Washington County Grand Jury which charged appellant with four counts of Rape, in violation of R.C. 2907.02(A)(2), each a felony of the first degree, and each alleging that on February 5, 1997, appellant had engaged in sexual conduct with Jean Ann Thorp by force or threat of force. On July 1, 1997, following extensive pretrial proceedings, the case proceeded to trial before a jury.
Throughout the course of the two day trial fifteen witnesses were called to testify. It was undisputed at trial that Jean Ann Thorp and appellant had been living together, intermittently, for the previous ten years and that he was the father of her four children; that for a period of time leading up to February 5, 1997, she, appellant and the four children had been living together in an apartment in Marietta; that on February 5, 1997, appellant was preparing to move to Arkansas to live with a woman with whom he had been communicating over the internet and by telephone; and that sometime between 3:00 p.m. and 6:30 p.m. appellant engaged in sexual conduct with Ms. Thorp four times.
At the trial, the state presented evidence to support its position that all four acts of sexual conduct were forced upon Ms. Thorp. Appellant presented evidence in his defense that all four acts of sexual conduct were consensual.
As to the issue of force, Ms. Thorp testified that when she came home from work on the afternoon of February 5, 1997, she and appellant discussed the fact that he was going to leave for Arkansas the next day and that he wanted to take their youngest child, Bennie, with him. Thereafter, appellant sent the older children to their room and told Ms. Thorp that he wanted to have sex with her "one more time" before he left. Thorp stated that she told him "no" and that "it wasn't right . . . that I didn't love him, he was leaving to go be with another woman, and the more I tried to explain it, he got angry." She testified that he then grabbed her by the arm and pulled her off the couch saying that she should have done it the easy way because now she was going to do it the hard way. As she fought, he "dragged" her down the hallway to their bedroom. Thorp described that "when we got to the doorway to the bathroom, I was grabbing the door frame, and he had gotten behind me and kind of pushed me through, and he grabbed my one arm and had it behind my back, and he put his other arm around my neck and was choking me and told me that I needed to be quiet and cooperate or he was going to kill me." She stated that she was crying and that to stop her from crying appellant, who weighed 270 pounds, "laid down on top of me and put his hand over my mouth and nose real hard so I couldn't breathe." Thorp then described in detail her recollection of how, over the next three hours, appellant, by force or threat of force, caused her to submit to three separate acts of vaginal intercourse and one act of oral intercourse. Thorp stated that in the midst of it, he left the room but "told me that I was to stay in the bedroom and I was going to be his slave until he left town and that I was to stay in the bedroom and wait for him so whenever he wanted it he could come in and get it." Thorp stated that she never stopped resisting appellant but did not want to make much noise and frighten the children who were in the next room. Thorp testified that as soon as she was presented with the opportunity to take all four children and run out of the apartment, she took them and ran to a neighbor's apartment where she hid from appellant.
In support of Ms. Thorp's testimony as to the use of force, the state called the parties' daughter, Samantha Thorp, as a witness. Samantha testified that she is nine years old and in the third grade. She stated that on the afternoon in question appellant picked her up from school, stopped to get food and then took her home. Samantha testified that after arriving home, appellant sent the kids to their bedroom. Samantha stated that her mother and father then went back to their bedroom, and that she kept hearing noises coming from her parents' room. After a while, she "snuck" out of her room to find out what the noises were. When she looked through the keyhole to her parents' room she saw her mother, Jean Thorp, laying on the bed with appellant on top of her, "hitting and fighting" her. Samantha testified further as to her mother taking her and her siblings and running out of the apartment to the neighbors' to hide from appellant.
Among the evidence offered by the defense was appellant's own testimony in which he acknowledged the sexual encounters but stated that all were consensual. In support thereof, appellant called his mother, Vy Hickmott, who testified that during that afternoon she talked to appellant on the telephone and could hear Jean Thorp's voice in the background saying, "c'mon Jeff, one more time for old times sake." Appellant also called the doctor who had examined Thorp the following day, February 6, 1997, at the "Marietta Memorial Hospital, E.R." who testified that he had found no evidence of trauma in Thorp's genital area.
In his first assignment of error appellant asserts that the trial court erred by admitting "evidence of prior acts," thereby denying him the right to "fair trial and due process of law." In support thereof, appellant argues that on direct examination of Jean Thorp, the state "elicited" testimony that he had forced himself on her six years earlier and that that act resulted in her becoming pregnant with their son Bennie.
A review of the record herein indicates that during direct examination of Ms. Thorp regarding a previous separation from appellant, the prosecutor, in an attempt to clear up some apparent confusion, stated to Ms. Thorp, "I am trying to find out if you were separated how Bennie was conceived." In response, Ms. Thorp volunteered, "He forced himself on me." There was no objection or request to strike by appellant and the prosecutor continued with his direct examination of Thorp. The record indicates further that on three separate occasions during cross examination of Thorp, appellant's counsel called to Thorp and the jury's attention that the day before she had told the jury that appellant had forced himself on her when Bennie was conceived.
The failure to object at trial constitutes a waiver of all but plain error. As set forth above, not only did appellant fail to object to Thorp's statement but, thereafter, through his counsel, repeated the statement to the jury three times.
Upon consideration of the record of proceedings in the trial court, this court finds that a) the statement of the witness that is the subject of this assignment of error was volunteered by that witness, not elicited by the state, b) appellant did not object to the statement at trial and thereby waived any claim of error resulting therefrom, and c) appellant does not claim that the admission of that statement of the witness constitutes plain error but, even if he had, this court cannot find that the statement in question is an obvious error or defect in the trial proceedings which affects a substantial right of appellant or that the outcome of the trial would have been different had that statement not been made. Accordingly, appellant's first assignment of error is found not well taken.
This court will consider appellant's second and third assignments of error together. In his second assignment of error, appellant asserts that the court erred by allowing evidence to be admitted as to Jean Thorp's mental condition after the February 5, 1997 incident. Appellant argues that such evidence, as testified to by both Ms. Thorp and Washington County Children Services case worker Bonnie O'Neal, is not relevant but if the court would find it relevant its probative value was substantially outweighed by "unfair prejudice and confusion of the issues."
In his third assignment of error, appellant argues more specifically that the court erred by admitting Ms. Thorp's statement that she suffered from post-traumatic stress syndrome without expert testimony as to what that means.
As with appellant's first assignment of error, this court notes that no objection was made in the trial court as to the evidence complained of in these assignments of error, no claim is made under either of these assignments of error that the allowance of this evidence constitutes plain error and, therefore, the claims raised under these assignments of error were waived.
This court notes further, however, that even if these claims of error had not been waived, Evid. Rule 401 provides that:
 "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
When considering that appellant acknowledged that the sexual encounters occurred but claims that they were consensual, this court cannot find it even remotely arguable that Ms. Thorp's mental condition after the incident is anything other than highly relevant and probative to the issue of whether or not she was a willing participant in the sexual activity that took place. While this court acknowledges that this evidence was prejudicial to appellant's defense, as was all of the state's evidence or it wouldn't have been offered, this court can find no basis for appellant's assertion that it was unlawfully or unfairly prejudicial.
As to Ms. Thorp's statement, when asked if she had "been diagnosed with any problem resulting from this episode," that she had been "diagnosed with having anxiety — extremely stressed out and traumatic stress syndrome, and I have a problem with disassociation," this court finds that, as set forth above, her condition after the incident was definitely relevant and probative. The fact that she put a label on it that may have a technical meaning did not render that testimony unfairly prejudicial.
Upon consideration of the foregoing, this court finds appellant's second and third assignments not well taken.
In his fourth assignment of error, appellant asserts that he was denied effective assistance of counsel when his trial attorney failed to present expert testimony in response to Ms. Thorp's statement that she suffered from post-traumatic stress syndrome.
To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different, when considering the totality of the evidence that was before the court. Strickland v. Washington (1984),466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent.State v. Hamblin (1988), 37 Ohio St.3d 153.
In considering appellant's argument that his counsel's representation was ineffective due to that counsel's failure to present expert testimony as to post-traumatic stress syndrome, a permissible inference is clearly that it was a legitimate trial strategy for appellant's counsel to choose not to call such a witness in order to avoid the possibility of further compromising appellant's defense that the sexual activity with Thorp had been consensual.
Upon consideration thereof, this court finds that appellant has not shown that trial counsel's representation fell below an objective standard of reasonableness. Accordingly, appellant's fourth assignment of error is found not well taken.
JUDGMENT AFFIRMED
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment and Opinion.
Kline, J.: Concurs in Judgment Only.
For the Court
 BY: __________________________ Charles David Abood, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
Charles David Abood, retired judge of the Sixth District Court of Appeals, sitting by assignment of the Ohio Supreme Court in the Fourth District.